# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7770 | **DATE** | 8/4/2004 |
| **CASE TITLE** | Sompo Japan Insurance vs. M/V Commander, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set out in this opinion, Commander is dismissed as a defendant pursuant to Rule 12(b)(2). (19-1) That renders moot its motion challenging, as noncompliant with Rules 4(f)(2) and 4(h)(2), the method employed by Sompo to serve process on Commander. As for the Vessel, it remains an in rem defendant.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 6 2004 | 33 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 8/5/2004 | |
| | | 2004 AUG -5 PM 2:39 | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SOMPO JAPAN INSURANCE COMPANY )
OF AMERICA, )
)
)
          Plaintiff, )
)
v. )   No. 03 C 7770
)
M/V COMMANDER, et al., )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

One of the several defendants in this admiralty action, Commander Navigation Co., Ltd. ("Commander," mistakenly named as "Commender" in the Complaint), has moved to be dismissed for lack of personal jurisdiction and insufficiency of service. Counsel for plaintiff Sompo Japan Insurance Company of America ("Sompo") and for Commander have provided this Court with input that, although it does not permit the resolution of all legal questions involved (as explained hereafter), nonetheless suffices for the decision of the motion. This memorandum opinion and order explains why Commander prevails on the first facet of its motion, rendering the second facet moot.

Commander is owner of the vessel M/V Commander (the "Vessel"), which is an in rem defendant in this action. Sompo provided insurance to cover some steel cargo that was shipped aboard the Vessel from Gemlik, Turkey to Chicago and that was assertedly damaged at some point between (1) the original delivery of the cargo to a carrier at the point of origin and

(2) the ultimate delivery of the cargo in Chicago. But at the time of the voyage the Vessel was subject to a maritime time charter party between Commander and Brochart KB ("Brochart"), which under the terms of the Time Charter documentation was made solely responsible for the Vessel's direction and control, including the decisions to undertake the voyage and to direct the Vessel to Chicago.

Because it is undisputed that Commander played no direct role in connection with the cargo or the Vessel's voyage that would support personal jurisdiction here, Sompo has to stake its jurisdictional bet on the fact that both the marine and ocean bills of lading referred to "Commender" as the carrier, listing Commander's address in Malta (it is indeed a Maltese corporation and has its principal place of business there). As might be guessed from the misspelling of its name, it was not Commander that prepared the bill of lading--that was done instead by Statu Chartering & Trading Ltd. ("Statu") of Istanbul, Turkey, which was Brochart's loading port agent and which signed the bills of lading "as agent on behalf of the carrier."

Under the terms of the charter party (which adapted the printed form of Time Charter approved by the New York Produce Exchange), "the Captain...is to sign Bills of Lading for cargo as presented, in conformity with Mate's and Tally Clerk's receipts" (lines 78-79 of the printed Time Charter form). And Sompo

2

emphasizes the terms by which Additional Clause 62 to the Charter party expanded on that provision:

> With reference to Lines 78/79 of Charter Party, Charterers and/or their agents are hereby authorised by owners to sign on Master's and/or Owners' behalf all Bills of Lading as presented in accordance with Mate's and Tally Clerk's receipts without prejudice to this Charter Party.

For its part Commander stresses the last phrase of that provision--"without prejudice to this Charter party"--to urge that Statu as Brochart's agent exceeded its conditional authority by preparing and signing bills of lading that named "Commender" as the carrier, but without inserting appropriate limiting language to reflect that it was Brochart, and not Commander at all, that was in complete control of the Vessel, of what it did and of where it went.

It is against that background that the current motion must be addressed. And to that end, although each party has cited to a number of cases, both at the Court of Appeals and at the District Court level, a few of the Court of Appeals decisions relied on by Commander provide the answer here.

First is the decision in EAC Timberlane v. Pisces, Ltd., 745 F.2d 715 (1st Cir. 1984). There the late Judge John Minor Wisdom of the Fifth Circuit, sitting by designation, explained for the panel (id. at 719 (numerous case citations omitted)):

> By its terms, COGSA applies "to all contracts for carriage of goods by sea to or from ports in the United States in foreign trade." 46 U.S.C. §1312 (1982). The

3

term "contract of carriage" includes only those "contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or document of title regulates the relations between a carrier and a holder of the same." Id. §1301(b). COGSA expressly does not apply to charter parties, except that bills of lading issued under charter party agreements must conform to the terms of COGSA. Id. §1305. Thus, COGSA is applicable to a shipowner that has chartered its vessel to a COGSA carrier only when the shipowner has entered into a contract of carriage with the shipper or has some privity of contract with the shipper.

As noted by the Fourth Circuit, "[a] contract of carriage with an owner may either be direct between the parties, or by virtue of a charterer's authority to bind the owner by signing bills of lading 'for the master.'" Generally, when a bill of lading is signed by the charterer or its agent "for the master" with the authority of the shipowner, this binds the shipowner and places the shipowner within the provisions of COGSA. When, however, a bill of lading is signed by the charterer or its agent "for the master" but without the authority of the shipowner, the shipowner is not personally bound and does not by virtue of the charterer's signature become a COGSA carrier.

EAC Timberlane, id. then went on to say:

In the instant case, the district court did not determine whether the bill of lading was signed by the charterer "for the master" with the authority of the shipowner so as to place the shipowner under the terms of COGSA.

Here this Court is similarly unable to make such a determination in any definitive fashion. Although Commander has persuasively negated its having granted actual authority to sign unconditional bills of lading, this Court has not been provided by the parties

4

with the necessary information to resolve the alternative to actual authority--to decide whether the factual scenario involved enough in the way of a "holding out" on Commander's part to support a finding of apparent authority, or conversely whether the existence of a time charter with its usual limitations, or perhaps of other relevant factors, was known by the shipper to the extent that would preclude such an apparent authority ruling.

But that question, which bears on Commander's possible liability and <u>not</u> on the issue of in personam jurisdiction that is now before this Court,[1] need not be answered here--for even if it were to be assumed that Commander's listing as carrier did render it subject to potential liability, two cases from other circuits make it plain that such personal jurisdiction is lacking here anyway. Both <u>Francosteel Corp. v. M/V Charm</u>, 19 F.3d 624, 627-29 (11th Cir. 1994) and <u>ASARCO, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784, 785-87 (5th Cir. 1990) are sufficiently close to this case so that an extended quotation from each opinion (particularly with an appropriate substitution of names) would reflect an analysis that might well have been written for this case. And although the situation addressed by our own Court of Appeals in <u>United Rope Distribs., Inc. v. Seatriumph Marine Corp.</u>, 930 F.2d 532 (7th Cir. 1991) was not quite so parallel to

---

[1] <u>EAC Timberlane</u> did not speak to that issue at all, for the question was not in dispute there.

the present factual situation as those in the other two cited cases, the thrust of its analysis would also tend to support the same result.

It is quite true that the vessel in each of those three cases--<u>Francosteel</u>, <u>ASARCO</u> and <u>United Rope</u>--sank before reaching its forum destination, while the voyage in this case was completed. But it is plain from the discussion in each of those opinions that the nonarrival at the ultimate destination was only an additional straw added to an already overburdened jurisdictional camel--and <u>not</u> the straw that broke the camel's back.

Sompo's Mem. 8 unpersuasively seeks to dismiss <u>Francosteel</u> and <u>ASARCO</u> as "inapposite." But as just stated, the sinking of the vessels in those cases--while admittedly presenting a factual matrix different to that extent from the one involved here--was plainly not viewed as outcome-determinative (on a but-for basis) by either Court of Appeals. So the fact that the Vessel and the cargo in this case were successful in reaching Chicago is a distinction without a legal difference. And as for the issue of authority or lack of authority that was posed in <u>EAC Timberlane</u> (but was not answered by the District Court there, and hence was not answered by the Court of Appeals either):

   1. <u>Francosteel</u>, 19 F.3d at 627 <u>assumed</u> that the
   vessel's owner was bound by the bills of lading. So the

decision there, which nonetheless rejected in personam jurisdiction over the owner, is essentially on all fours with this case.

2. ASARCO, 912 F.2d at 786 did say that the signature of the entity that signed the bill of lading as agent (the counterpart of Statu in this case) was "apparently...on behalf of one of the charterers." That might be argued to lessen the precedential force of that decision, because in this case there was a specific delegation of authority to the Vessel's Captain in the Time Charter documents. But be that as it may, it remains true that in this case, just as was said in ASARCO, id. at 787, Commander itself did not "purposefully direct" the cargo to Chicago.

Just a word should be added about Sompo's alternative request for discovery, to explore the possibility that general jurisdiction rather than special jurisdiction might perhaps support haling Commander into this Illinois forum. On that score, even if it were to be demonstrated that one or more charter parties, operating under Time Charter documents over a span of time, had contracted for voyages having Illinois destinations chosen by the charter parties and not by Commander, the result would be the same: After all, the addition or even multiplication of zeros produces the same zero result. Sompo's motion in that respect, advanced without anything other than

speculation,[2] amounts to nothing more than a proposed fishing expedition seeking to operate from a vessel that is suited to commercial voyages and not to angling.

## Conclusion

For the reasons set out in this opinion, Commander is dismissed as a defendant pursuant to Rule 12(b)(2). That renders moot its motion challenging, as noncompliant with Rules 4(f)(2) and 4(h)(2), the method employed by Sompo to serve process on Commander. As for the Vessel, it remains an in rem defendant.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 4, 2004

---

[2] Captain Dimitris Karagiorgis, who is Operations Manager of Kristen Marine, S.A. (identified as the Vessel's managers), has said this in his June 10, 2004 declaration in support of Commander's motion to dismiss (Decl. ¶¶6-7):

> 6. Commander Navigation Co. is a foreign corporation that does not maintain any offices in the United States, nor any employees, telephone listings or designated agents in any state in the United States. The company has not engaged in any business activities in the State of Illinois.
>
> 7. Commander Navigation Co. has not engaged in any purposeful activity within the State of Illinois.

Nothing whatever has been advanced by Sompo to cast any doubt on those representations.